UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:11-CV-00015-M

MITCHELL R. GARRITY and
SHERRY L. GARRITY                                                    PLAINTIFFS

V.

WAL-MART STORES EAST,
LIMITED PARTNERSHIP                                                  DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Wal-Mart's Motion for Summary Judgment [DN 24] and its First Motion in Limine Concerning Plaintiffs' Expert, Keith Vidal, P.E. [DN 26]. Fully briefed, this matter is ripe for decision. For the following reasons, Wal-Mart's motion for summary judgment is **DENIED** and Wal-Mart's motion in limine is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

On February 12, 2010, Plaintiffs Mitchell Garrity and Sherry Garrity took their daughters to Wal-Mart Store #701 to get their 1997 Ford Explorer serviced. Mr. Garrity also planned to exchange some items that he had previously purchased at Wal-Mart. Mr. Garrity parked his vehicle in the oil-express lane on the west side of Wal-Mart Store #701, near the entrance of the Tire & Lube Express ("TLE") Department. He then walked with his family through the entrance of the TLE Department.

While his wife and daughters went to the restroom, Mr. Garrity registered his vehicle for service. He then asked the Wal-Mart employee who took his service order whether he could return his items through the TLE Department. Testimony is conflicting as to the employee's response. Both parties agree that the employee informed Mr. Garrity that he could not return the items through the TLE Department, as Wal-Mart's policy required all returned items to be taken through either the

store's general merchandise entrance or its grocery entrance.  However, Mr. Garrity testified that the employee also instructed him to walk out of the TLE Department to the front of the store.  (Dep. of Mitchell Garrity [DN 24-4] 20.)  The employee testified that she did not instruct Mr. Garrity to do so.  (Dep. of Angela Dickens [DN 24-8] 17–18.)  Regardless, Mr. Garrity exited the TLE Department through the same door that he entered and proceeded toward the front of the store.  According to Mr. Garrity, both the TLE parking lot and the area immediately outside the TLE Department were clear of ice and snow.  (Dep. of Mitchell Garrity [DN 24-4] 22.)

Mr. Garrity then began walking on the only sidewalk that connects the TLE Department to the front of the store, which sidewalk is adjacent to Wal-Mart's lawn and garden area.  At this point, Mr. Garrity slipped and fell on black ice, breaking his hip and injuring his lower back.  (Id. at 27–31.)  Mr. Garrity testified that the sidewalk on which he slipped "looked like it had been worked on, and it was wet in areas."  (Id. at 23.)  He further testified that it "looked like somebody had cleared a path," as the snow appeared to have been cleared to the sidewalk's sides.  (Id. at 23, 27.)  After Mr. Garrity fell, he first discovered the black ice.  (Id. at 25.)

Soon after Mr. Garrity fell, he was approached by another Wal-Mart customer.  She testified that she did not see the ice when she looked at the sidewalk, but when she went to help Mr. Garrity, she almost slipped and fell.  (Aff. of Mary Freeman [DN 30-4] ¶ 3.)  The customer further testified that the existence of ice was deceptive, as "it looked like the sidewalk was wet."  (Id. at ¶ 4.)  Also, an EMT who arrived on the scene to treat Mr. Garrity testified that the sidewalk appeared to be only wet and that he almost slipped on ice.  (Aff. of Bill Bratcher [DN 30-5] ¶ 5.)  Wal-Mart concedes that "no clearing or attempt at clearing was performed on the concrete sidewalk where Mitchell fell." (Defs.' Mem. in Supp. of Mot. for Summ. J. [DN 24-2] 5.)

2

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In considering a motion for summary judgment, the Court must remain cognizant of the role that expert testimony plays. In this regard, Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the

3

facts of the case.

Fed. R. Evid. 702.  Under Rule 702, the judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant.  Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)).  In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 595 (1993).

In Daubert, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion.  These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" in a "relevant scientific community." 509 U.S. at 592–94.  This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702.  Kumho Tire, 526 U.S. at 147.

Whether the Court applies the Daubert factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Kumho Tire, 526 U.S. at 150 (quotation omitted).  Any weakness in the underlying factual basis bears on the weight, as opposed to the admissibility, of the evidence.  *In re* Scrap Metal Antitrust Litigation, 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

### III. DISCUSSION

In its motion in limine concerning Plaintiffs' expert, Keith Vidal, Wal-Mart argues that Mr. Vidal is not qualified to testify as to the opinions that he has given in this case and that his opinions

are not based on specialized knowledge that will assist the trier of fact. In its motion for summary judgment, Wal-Mart argues that it is entitled to summary judgment since it did not have a duty to protect Mr. Garrity from the ice on which he fell. The Court considers these motions in turn.

### A. DEFENDANT'S FIRST MOTION IN LIMINE CONCERNING PLAINTIFFS' EXPERT, KEITH VIDAL, P.E. [DN 26]

Wal-Mart contends that Mr. Vidal's testimony must be excluded because: (1) his opinions will not assist the jury; (2) he lacks the necessary qualifications to render the opinions given in this case; and (3) the introduction of his opinions would violate Federal Rule of Evidence 403. Plaintiffs counter that Mr. Vidal's opinions are reliable and relevant. According to Plaintiffs, they should be admitted since they will help the jury understand the issues in this case. For the following reasons, the Court agrees with Wal-Mart as to some of the conclusions presented by Mr. Vidal. Thus, Wal-Mart's motion to exclude Mr. Vidal's testimony is **GRANTED** in part and **DENIED** in part.

Mr. Vidal holds both a Bachelor's degree and a Master's degree in mechanical engineering. (Curriculum Vitae [DN 23-1] 2.) He has practiced as a consulting safety engineer for approximately twenty-five years. (Id. at 1–3; Aff. of Keith Vidal [DN 29-1] ¶ 1.) As a consulting safety engineer, Mr. Vidal consults with various businesses on how to make their premises safe. He also trains safety professionals, risk managers, and other industrial safety personnel on how to prevent slips, trips, and falls on their premises. (Aff. of Keith Vidal [DN 29-1] ¶¶ 1, 2.) During his time as a safety engineer, Mr. Vidal has investigated over one thousand cases involving slips, trips, and falls. (Id. ¶ 3.)

In the present case, Mr. Vidal reviewed the documents generated through discovery and came to several conclusions as to Mr. Garrity's slip-and-fall. With respect to the area of human factors, Mr. Vidal concluded that: (1) it was reasonable and foreseeable that Mr. Garrity would use the sidewalk; (2) several factors likely contributed to Mr. Garrity's inability to detect the ice on

5

which he slipped; (3) Wal-Mart's policy regarding returns increased the likelihood of Mr. Garrity slipping; and (4) the presence of wet areas on maintained parts of Wal-Mart's premises led to an expectation that the entire facility was appropriately maintained. With respect to Wal-Mart's alleged liability, Mr. Vidal concluded that Wal-Mart failed to properly maintain its premises because it did not meet generally-accepted industry standards, did not comport with Owensboro's adopted codes and ordinances, and did not comply with its own internal policy. With respect to causation, Mr. Vidal concluded that as a direct result of Wal-Mart's failure to properly maintain its premises, Mr. Garrity was caused to fall. The Court will analyze the admissibility of each of these conclusions in turn.

### A.      Testimony on Human Factors

Mr. Vidal intends to testify as to his conclusions on several matters relating to human factors. Wal-Mart's primary contention is that these conclusions must be excluded since Mr. Vidal lacks the necessary qualifications to offer them. Wal-Mart asserts that Mr. Vidal is a mechanical engineer–not a human factors expert. It further asserts that since Mr. Vidal is not a human factors expert, he is not qualified to testify as such. According to Wal-Mart, Mr. Vidal is unlike the expert who was allowed to testify on human factors in Daves v. Morgan Tire & Auto, Inc., 2009 WL 5126579 (W.D. Ky. Dec. 18, 2009), as he does not hold a degree in human factors or base his opinions on publications in that field. Therefore, it should be left up to Mr. Garrity to testify as to what motivated his conduct and as to how he was affected by the environment. In support of its argument that Mr. Vidal is not qualified to give opinions on human factors, Wal-Mart highlights the fact that the case deals with an icy sidewalk–not with the design, the construction, or the materials involved in a structure that would normally be the area of concern for a mechanical engineer.

6

(Def.'s Reply Mem. in Supp. of its First Mot. in Limine Concerning Pls.' Expert Keith Vidal, P.E. [DN 31] 2.)

The Court finds that while Mr. Vidal holds degrees in mechanical engineering, as opposed to in human factors, he is qualified to offer opinions on such matters.[1]  Mr. Vidal's qualification stems from his education and experience.  As to education, Mr. Vidal has testified that human factors are a foundation of mechanical engineering.  He has also testified that human factors were taught in many of the courses that he completed to obtain his degrees.  (Aff. of Keith Vidal [DN 29-1] ¶ 6.)  Thus, Mr. Vidal has specialized knowledge on human factors from his education, and this knowledge provides a foundation upon which he can testify.  As to experience, the Court finds it significant that Mr. Vidal has approximately twenty-five years of experience as a safety engineer where he has evaluated over one thousand cases involving slips, trips, and falls–as well as the human factors that contributed to those falls.  (Id. ¶ 7.)  The Court also finds it significant that Mr. Vidal has attended and participated in several studies, seminars, and workshops where individuals have been exposed to various conditions so that others can better understand how humans interact with man-made and natural environments.  (Id.)  Indeed, due to his education and experience, the Court concludes that Mr. Vidal has the requisite specialized knowledge to testify on human factors.

However, having the requisite specialized knowledge to testify on human factors does not mean that Mr. Vidal can offer **any** opinion on the matter.  Instead, under Federal Rule of Evidence 702, Mr. Vidal can only testify regarding human factors if it "will help the trier of fact to understand

---

[1] Ironically, Mr. Vidal has been criticized by defendants in other cases for failing to highlight human factors in his analyses.  See, e.g., Leonard v. Bearcat Corp., 2002 WL 34532924, at *2 (E.D. Mo. Aug. 20, 2002) (arguing that Mr. Vidal's opinions must be excluded since he "did not take into account human factors").

the evidence or to determine a fact in issue." Fed. R. Evid. 702. Thus, Wal-Mart argues that Mr. Vidal's opinions must be excluded because they will not assist the jury. According to Wal-Mart, Mr. Vidal's opinions will not assist the jury because he has no specialized knowledge on the appearance of black ice, the slipperiness of ice, the difference between a well-maintained sidewalk and one that is not well-maintained, or what caused Mr. Garrity's fall other than ice on the sidewalk. (Def.'s Mem. in Supp. of its First Mot. in Limine Concerning Pls.' Expert Keith Vidal, P.E. [DN 23] 10.) Wal-Mart contends that neither a mechanical engineer nor a safety professional is required for the jury to know that the presence of ice on a sidewalk renders it more dangerous to traverse. Instead, the jurors' normal life experiences are sufficient to permit them to draw their own conclusions.

The Court finds that Wal-Mart is correct to assert that "it is a matter of common knowledge that ice is slippery" and that "[i]t is also a matter of common knowledge that ice is not always easily detectible because a thin layer of ice is translucent and looks the color upon which it is frozen." (See Def.'s Mem. [DN 23] 6.) But what Wal-Mart fails to recognize is that Mr. Vidal's testimony extends beyond these matters of common understanding. Specifically, Mr. Vidal intends to testify as to how a person views a sidewalk before walking on it, paying particular attention to the effects of one's visual field and the effects that lighting and shadows may have on the ground's surface. Since the Court finds that this testimony is both relevant and reliable, it also finds that it must be admitted. The testimony will assist the jury in making its determinations.

Mr. Vidal's opinions on the factors that impair visibility are relevant to the issues in this case. As discussed below, there are genuine disputes of material fact as to whether the ice on the sidewalk was open and obvious and, if not, as to whether Wal-Mart should have foreseen that Mr.

Garrity would slip and fall.  Additionally, if the jury finds that Wal-Mart owed a duty to Mr. Garrity, there are genuine disputes of material fact as to whether Wal-Mart acted reasonably in making no attempt to clear the sidewalk and as to whether Mr. Garrity acted reasonably in walking across the sidewalk.  Mr. Vidal's opinions as to the factors that likely contributed to Mr. Garrity's inability to detect the ice will assist the jury in its evaluation of these issues.  Similar testimony has been admitted in other cases.  See, e.g., Sparks v. Baptist Hosp. of E. Tenn., Inc., 1998 WL 188540, at *4 (Tenn. App. Apr. 3, 1998) (Susano, J., concurring) (admitting an expert's testimony as to the factors that impair visibility and noting that such testimony "will help the jury determine . . . comparative fault").

Mr. Vidal's opinions on the factors that impair visibility are also reliable.  As previously discussed, Mr. Vidal bases his conclusions on approximately twenty-five years of experience and his education, as well as on various studies, seminars, and workshops.  Additionally, to support his opinions, Mr. Vidal cites a published work regarding the effects that visual fields have on identifying hazards.  See G. Bakken et al., Slips, Trips, Missteps and Their Consequences 355 (2d ed. 2007).  His opinions, therefore, are reliable.  Since Mr. Vidal's opinions are both relevant and reliable, the Court finds that they must be admitted.  Indeed, while Mr. Garrity can certainly testify as to what motivated his conduct and as to how he was affected by the environment, Mr. Vidal is in no way precluded from also testifying.  See Sparks, 1998 WL 188540, at *4 (noting that "[a] person may know that he or she has difficulty in distinguishing objects under certain circumstances, but this does not necessarily mean that the person knows the scientific reasons for his or her difficulty").

However, the Court finds that some of Mr. Vidal's conclusions concerning human factors

will not assist the jury, as Mr. Vidal knows no more about some of the issues than does an average person.  Specifically, the Court finds that it must exclude Mr. Vidal's opinion that it was reasonable and foreseeable that Mr. Garrity would use the sidewalk.  The Court also finds that it must exclude Mr. Vidal's opinions that Wal-Mart's return policy increased the likelihood of Mr. Garrity slipping and that the presence of wet areas on maintained parts of Wal-Mart's premises led to an expectation that the entire facility was maintained.  As the Supreme Court has noted,

> [E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'

Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962) (citation omitted).  Here, after hearing the testimony of witnesses, the jurors will be able to decide whether it was reasonable and foreseeable that Mr. Garrity would use the sidewalk.  They will also be able to determine whether Wal-Mart's policy increased the likelihood of Mr. Garrity's fall and whether it was reasonable for Mr. Garrity to expect a clear sidewalk due to the presence of wet areas on maintained portions of Wal-Mart's premises.  Indeed, as to these issues, Mr. Vidal possesses no specialized knowledge and, thus, he cannot possess an expert opinion.  Therefore, as to these issues, the Court finds that the jurors' own experiences permit them to draw their own conclusions.  Mr. Vidal's opinions must be excluded.

### B.       Testimony on Wal-Mart's Alleged Liability

Mr. Vidal also intends to testify that Wal-Mart failed to exercise reasonable care to maintain its sidewalks in a safe condition for its business invitees.  (See Report of Keith Vidal [DN 23-1] 10.)  Mr. Vidal bases this conclusion on industry standards, Owensboro's adopted codes and ordinances, and Wal-Mart's internal policy regarding the maintenance of exterior walkways.   In its

memorandum in support of its motion in limine, Wal-Mart argues that Mr. Vidal should not be permitted to testify as to these standards, as they "add nothing to the jurors' ability to discern for itself [sic] that the sidewalk was a hazard, unguarded and not warned against." (Def.'s Mem. [DN 23] 12.)  In support, Wal-Mart cites Kenton County Public Parks Corp. v. Modlin, 901 S.W.2d 876 (Ky. App. 1995).

In Modlin, the plaintiff was injured when he drove his golf cart into a rope that was stretched across a golf course's fairway. 901 S.W.2d at 877.  The defendant offered the expert testimony of a director and chief agronomist with the U.S. Golf Association.  He intended to testify that the roping method was used throughout the golfing industry.  The trial court, however, excluded the testimony.  The Kentucky Court of Appeals affirmed.  In so doing, the Court of Appeals noted that the case was one of "garden-variety negligence."  Id. at 881.  It explained as follows:

> There is no question about Mr. Zontek's qualifications as an expert, but in this case he had nothing so specialized to testify about. The issue was whether a golf course was negligent in putting a rope, without adequate warning, in a position where golfers could be hurt. Being a case of ordinary negligence, it required nothing more than ordinary testimony from ordinary people. The trial court's ruling is supported by KRE 702 and KRE 703. There was no error in this regard.

Id. at 881.  According to Wal-Mart, because the present case is a "garden-variety" slip-and-fall, there is similarly no need for expert testimony.  Therefore, the Court should exclude Mr. Vidal's testimony concerning industry standards, city ordinances, and Wal-Mart's internal policy.

However, trial courts routinely allow expert testimony in slip-and-fall cases when it helps the jury understand the evidence in question.  See, e.g., Daves v. Morgan Tire & Auto, Inc., 2009 WL 5126579 (W.D. Ky. Dec. 18, 2009) (allowing a safety engineer to testify on a store's lack of adequate inspection and a patron's difficulty in perceiving a hazard after the patron slipped on liquid in the store's bathroom); Van Holt v. Nat'l R.R. Passenger Corp., 669 N.E.2d 1288 (Ill. App. 1996)

(allowing an engineer to testify regarding a road's uneven surface, the slickness of oil, and lighting conditions after the plaintiff fell at a train station). Additionally, trial courts routinely allow experts to testify on industry standards, ordinances, and policies. See, e.g., Ky. River Med. Ctr. v. McIntosh, 319 S.W.3d 385 (Ky. 2010) (affirming a trial court's decision to allow a safety engineer's testimony on OSHA regulations for emergency room entrances after a paramedic tripped at a hospital); Peoples v. Fred's Store of Tenn., Inc., 38 So.3d 1209, 1221–22 (La. App. June 2, 2010) (admitting the testimony of a safety professional who testified that a store violated universal industry standards for the minimum height of floor displays, causing the plaintiff to trip and fall). In this case, if the jury determines that Wal-Mart owed a duty to Mr. Garrity, it will be required to evaluate the parties' comparative fault and determine whether it was reasonable for Wal-Mart to make no attempt at clearing the sidewalk. The Court finds that in conducting this evaluation, the jury would be assisted by Mr. Vidal's testimony as to industry standards, Owensboro's ordinances, and Wal-Mart's policy.

In this regard, the Court finds it telling that despite Wal-Mart's insistence in its memorandum that these standards must be excluded, Wal-Mart concedes in its reply that Mr. Vidal can "bring to the jury's attention" the standards and property maintenance requirements. (Def.'s Reply Mem. [DN 31] 2.) But while Wal-Mart makes this concession, it nevertheless argues that the Court must exclude Mr. Vidal's conclusion that Wal-Mart was negligent in having an un-maintained sidewalk on its premises. (Id. at 2–3.) According to Wal-Mart, the Court must exclude the conclusion since it will not help the jury and since it is for the jury to decide the weight to be given to the standards.

However, the Court concludes that in addition to being qualified to bring the standards to the jury's attention, Mr. Vidal is qualified to explain the meaning of these standards to the jury–and to

offer his expert opinion on whether Wal-Mart complied with them.  Indeed, with his education and extensive experience as a safety engineer, it is clear that Mr. Vidal has sufficient familiarity with the standards to do so.  The Court notes that Mr. Vidal's qualification to offer explanations and opinions is strengthened by the fact that he has served as the chairman for the American National Standards Institute sub-committee that was responsible in 2003 for drafting standards for walkways used by employees and pedestrians.  His qualification is also strengthened by the fact that he served on an American Society for Testing and Materials committee that developed standards for the construction and maintenance of pedestrian walkways.  (Curriculum Vitae [DN 23-1] 2; Aff. [DN 29-1] ¶¶ 4–5.)  Importantly, Mr. Vidal's opinions will not be barred simply because they address an ultimate issue.  See Stringer v. Commonwealth, 956 S.W.2d 883, 889–90 (Ky. 1997) (noting that "[t]he real question should not be whether the expert has rendered an opinion as to the ultimate issue, but whether the opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue'").

### C.    Testimony on Causation

As a final matter, Mr. Vidal intends to testify that as a result of Wal-Mart's failure to properly maintain its premises, Mr. Garrity was caused to fall.  Again, Wal-Mart contends that the Court must exclude this opinion since it addresses the ultimate question in the case and since jurors are capable of resolving it by themselves. (Def.'s Mem. [DN 23] 5.)  The Court concludes that Mr. Vidal's opinion will not be barred simply because it addresses an ultimate issue.  See Stringer, 956 S.W.2d at 889–90. However, the Court also concludes that the jury is capable of drawing its own conclusions on this issue. Eye witness testimony, in combination with the jurors' normal life experiences, will provide the jury with sufficient information so that it can draw its own conclusion

concerning the cause of Mr. Garrity's fall.  See Salem, 370 U.S. at 35 (noting that expert testimony may properly be excluded if men of common understanding are as capable of comprehending the facts and of drawing correct conclusions as are witnesses possessed of special training).  As Wal-Mart highlights, "it is a matter of common knowledge that ice is slippery."  (Def.'s Mem. [DN 23] 6.)

At this point, the Court wishes to briefly address Wal-Mart's claim that Mr. Vidal's opinions must be excluded because their introduction will violate Federal Rule of Evidence 403.  The Court finds this claim to be without merit. In this regard, the Court finds that the probative value of Mr. Vidal's testimony is not substantially outweighed by the danger of unfair prejudice.  Wal-Mart has failed to show how the jury would be prejudiced by Mr. Vidal's testimony, and any prejudice can be remedied at trial by Wal-Mart's cross-examination. Also, the Court finds that the probative value of Mr. Vidal's testimony is not substantially outweighed by the danger of confusion of the issues or by the potential for misleading the jury–and the testimony's introduction will not cause undue delay or waste time.  Therefore, his testimony will not be excluded on such a basis.

## B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DN 24]

Wal-Mart argues that it is entitled to summary judgment because it did not have a duty to protect Mr. Garrity from the ice on which he fell.  Kentucky law provides that "the owner of a business premises has no duty to protect invitees from injuries caused by 'natural outdoor hazards which are as obvious to an invitee as to an owner of the premises.'"  Horne v. Precision Cars of Lexington, Inc., 170 S.W.3d 364, 368 (Ky. 2005) (quoting Standard Oil Co. v. Manis, 433 S.W.2d 856, 858 (Ky. 1968)).  According to Wal-Mart, since Mr. Garrity did not observe the ice until he fell, and since others who came to his aid did not see the ice until they slipped, the ice was as

obvious to invitees as it was to Wal-Mart.  See, e.g., Bryan v. O'Charley's Inc., 2003 WL 21949182, at *4 (Ky. App. Aug. 15, 2003) (recognizing that black ice "would be virtually impossible for anyone to discover" and holding that it is "as obvious to the invitee as to the owner").  By contrast, Plaintiffs suggest that the Kentucky Supreme Court's decision in Kentucky River Medical Center v. McIntosh, 319 S.W.3d 385 (Ky. 2010) renders summary judgment inappropriate in this case.

Prior to the McIntosh decision, Kentucky law was "not generous to business invitees who suffer[ed] an injury as a result of a risk created by an obvious, outdoor natural condition . . . ." Gaff v. Johnson Oil Co., 45 Fed. App'x 499, 501 (6th Cir. 2002).  The general rule was that "the owner of a business premises [had] no duty to protect invitees from injuries caused by 'natural outdoor hazards which [were] as obvious to an invitee as to an owner of the premises.'" Horne v. Precision Cars of Lexington, Inc., 170 S.W.3d 364, 368 (Ky. 2005) (quoting Standard Oil Co. v. Manis, 433 S.W.2d 856, 858 (Ky. 1968)).  Of course, "the applicability of this bright-line rule turned upon whether the condition was open and obvious." Lahutsky v. Wagner Moving & Storage, Inc., 2011 WL 5597330, at *5 (W.D. Ky. Nov. 17, 2011).  "If the condition was open and obvious, a landowner had no duty to protect, but if it was not open and obvious, then the landowner had a duty to use reasonable precautions to protect invitees from injury resulting from the condition." Id.

In McIntosh, however, the Kentucky Supreme Court modified the open and obvious doctrine, making it more compatible with Kentucky's comparative fault regime. 319 S.W.3d 385, 389–90 (Ky. 2010).  The case arose when a paramedic tripped over an unmarked curb located between an ambulance dock and a hospital's emergency room, suffering a fractured hip and sprained wrist. Id. at 387–90.  The Court adopted the modern trend on premises liability as stated in the Restatement (Second) of Torts § 343A(1) (1965). Id. at 389–90.  It explained its new position as follows:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, **unless the possessor should anticipate the harm despite such knowledge or obviousness.**

Id. at 389 (citation omitted).  The Court then elaborated by stating that there are cases where a land possessor "can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger."  Id.

Wal-Mart claims that McIntosh is inapplicable to cases involving natural outdoor hazards. The Court disagrees.  The Kentucky Court of Appeals has interpreted McIntosh to apply to natural outdoor hazard cases.  In Bruner v. Miami Management Co., the Court of Appeals recognized the defendant's argument that "McIntosh should be narrowly applied to its facts, i.e. when the danger is manmade, not when the danger is the result of a natural hazard."  2012 WL 1484056, at *4 (Ky. App. Apr. 27, 2012).  It then asserted, however, that it did "not read McIntosh that narrowly."  Id. The Court of Appeals has rendered additional decisions interpreting McIntosh in this regard.  See, e.g., Resnick v. Patterson, 2012 WL 3236613 (Ky. App. Aug. 10, 2012) (applying McIntosh when the plaintiff fell in a hole in the defendant's backyard); Webb v. Dick's Sporting Goods, 2011 WL 3362217 (Ky. App. Aug. 5, 2011) (applying McIntosh when the plaintiff slipped on a wet tile on the defendant's premises after it had rained).

The Court also finds guidance from other federal courts in Kentucky, as they have rendered decisions supporting this conclusion.  For example, Magistrate Judge Robert E. Wier wrote that "[n]othing in the plain language of McIntosh limits its holding to man-made hazards . . . ." Schmidt v. Intercontinental Hotels Grp. Res., Inc. & Hotel, 850 F. Supp. 2d 663, 672 (E.D. Ky. 2012); accord Powers v. Tirupathi Hospitality, LLC, 2011 WL 251001, at *4 (E.D. Ky. Jan. 26, 2011) (holding that "the Kentucky Supreme Court intended for its decision in McIntosh to apply to all premises owner

16

liability claims, including cases involving purportedly open and obvious natural outdoor hazards"). Similarly, Judge Thomas B. Russell applied McIntosh and denied summary judgment after a truck driver slipped on ice and fell down a set of external stairs on the defendant's premises. Lahutsky v. Wagner Moving & Storage, Inc., 2011 WL 5597330 (W.D. Ky. Nov. 17, 2011). Therefore, based on these decisions, the Court holds that McIntosh applies to cases involving natural outdoor hazards.

Wal-Mart also claims that it is entitled to summary judgment when the facts are considered in light of McIntosh. To determine the accuracy of this claim, the Court must first decide whether the ice that posed the danger to Mr. Garrity was open and obvious.

Plaintiffs argue that a genuine issue of material fact exists as to whether the ice was open and obvious. The Court agrees. Kentucky courts have long held that a danger is obvious when "both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment." Bonn v. Sears, Roebuck & Co., 440 S.W.2d 526, 529 (Ky. 1969). The courts have also held that "whether a natural hazard like ice or snow is obvious depends on the unique facts of each case." Schreiner v. Humana, Inc., 625 S.W.2d 580, 581 (Ky. 1981). In this case, the Court cannot say as a matter of law that the ice upon which Mr. Garrity slipped was open and obvious. Plaintiffs have presented evidence that there was no precipitation for at least two days prior to Mr. Garrity's fall. (See Weather Records [DN 30-3].) Plaintiffs have also presented testimony that the sidewalk seemed wet and that the ice upon which Mr. Garrity slipped appeared to be water. (See Dep. of Mitchell Garrity [DN 24-4] 23; Dep. of Troy Wilkes [DN 24-5] 55; see also Aff. of Mary Freeman [DN 30-4] ¶ 3; Aff. of Bill Bratcher [DN 30-5] ¶ 5.) Additionally, Plaintiffs have presented testimony that it may have been difficult to distinguish the ice from water because there was a fence next to the sidewalk that created

17

a shadow.  (See Aff. of Bill Bratcher [DN 30-5] ¶ 6.)  Thus, there is a genuine dispute of material

fact as to whether the ice upon which Mr. Garrity slipped was open and obvious.

      Moreover, the Court finds that even if the ice was open and obvious, summary judgment

would still be inappropriate.  As instructed by McIntosh,

> The lower courts should not merely label a danger as "obvious" and then deny
> recovery.  Rather, they must ask whether the land possessor could reasonably foresee
> that an invitee would be injured by the danger.  If the land possessor can foresee the
> injury, but nevertheless fails to take reasonable precautions to prevent the injury, he
> can be held liable.

McIntosh, 319 S.W.3d at 392.  The questions thus become whether Wal-Mart could have foreseen

Mr. Garrity's injury and, if so, whether it failed to take reasonable precautions to prevent that injury.

      The Kentucky Supreme Court in McIntosh detailed three circumstances where injuries are

foreseeable–and thus where land possessors owe a duty to invitees despite a condition's

obviousness.  319 S.W.3d at 393.  First, a land possessor owes a duty when it is foreseeable that an

invitee might be distracted from a danger.  Second, a land possessor owes a duty when it is

foreseeable that an invitee might forget a danger previously discovered.  Third, a land possessor

owes a duty when it is foreseeable that an invitee might choose to encounter a danger because the

advantages of doing so outweigh the apparent risks.  Id.  In the present case, the Court finds that

there is a genuine dispute of material fact as to whether Wal-Mart could foresee Mr. Garrity's injury.

Particularly, the Court finds that there is a question as to whether an invitee might choose to

encounter the ice because the advantages of getting to the front of the store outweigh the apparent

risks.  The Court finds Schmidt v. Intercontinental Hotels Grp. Res., Inc. & Hotel, 850 F. Supp. 2d

663 (E.D. Ky. 2012) persuasive.

      In that case, Ms. Schmidt checked into a Holiday Inn and the hotel's attendant instructed her

on the shortest route to her room.  850 F. Supp. 2d at 664.  Specifically, the attendant told her to exit the hotel, park her car near a certain section of the Holiday Inn, and then walk to her room from the parking lot.  Id. at 664.  As Ms. Schmidt walked down the sidewalk to her room, however, she fell on a patch of black ice.  Id. at 664–65.  Holiday Inn moved for summary judgment.  Id. at 666.  In denying Holiday Inn's motion, the court paid particular attention to the fact that the hotel's attendant instructed Ms. Schmidt on where to walk.  Id. at 668.  The court also highlighted the fact that the hotel had cleared the parking lots and some of the sidewalks–but had not cleared all of the sidewalk where Ms. Schmidt fell.  Id. at 670–71.  According to the court, "[a] possessor that knows an area is dangerous and yet tells an invitee to encounter the danger . . . surely could foresee that a guest, unfamiliar with the premises, would trust and follow the hotel's entry advice . . . ."  Id. at 671.

Similarly, in this case, Plaintiffs presented evidence that Wal-Mart had cleared the parking lots and some of the sidewalks–but had not cleared the sidewalk where Mr. Garrity fell.  Moreover, Wal-Mart concedes that no clearing attempt was undertaken on the sidewalk where Mr. Garrity fell.  Further, Mr. Garrity testified that a Wal-Mart employee instructed him to exit the TLE Department and walk to the front of the store to make his exchange.  Since a reasonable jury could conclude that Wal-Mart knew that the sidewalk had not been cleared and yet told Mr. Garrity to walk to the front of the store, summary judgment is not appropriate.

This conclusion is strengthened by the Kentucky Court of Appeal's decision in Webb v. Dick's Sporting Goods, 2011 WL 3362217 (Ky. App. Aug. 5, 2011).  In that case, Ms. Webb went to Dick's Sporting Goods during the Christmas season to shop for hunting supplies.  Id. at *1.  When she entered the store, she noticed that water had accumulated between the entrance mats because it had previously rained that day.  Ms. Webb nonetheless stepped on a tile in the center of the mats that

19

she believed to be dry.  Since the tile was wet, Ms. Webb fell.  Id.  In reversing the trial court's grant of summary judgment, the Kentucky Court of Appeals found it foreseeable that invitees to Dick's Sporting Goods "would appreciate a potential risk but proceed despite that risk."  Id. at *3.

Similarly, in this case, the Court concludes that summary judgment is not appropriate.  While Wal-Mart argues that the sidewalk was not cleared because the lawn and garden area was closed to customers in the winter, (see Def.'s Mem. [DN 24-2] 4), the Court finds that the evidence in the record could lead a reasonable jury to conclude that Mr. Garrity might choose to encounter the ice because the advantages of getting to the front of the store outweighed the apparent risks.  The fact that Mr. Garrity had alternative options of walking on the cleared parking lot or making the returns at another time does not change this fact.  See Webb, 2011 WL 3362217, at *1 (reversing the trial court's grant of summary judgment despite the invitee's admission that she "could have stepped in another direction if she had waited for other customers to pass").

The Court also finds that summary judgment is inappropriate because there are two additional genuine disputes of material fact relating to the parties' comparative fault.  First, if the jury finds that Wal-Mart owed a duty to Mr. Garrity, there is a genuine dispute of material fact as to Wal-Mart's fault.  While Wal-Mart concedes that it did not clear the sidewalk of ice and snow accumulation, it also claims that it was not required to do so, as the lawn and garden area was closed in the winter.  (Def.'s Mem. [DN 24-2] 4.)  Whether it was reasonable to leave the sidewalk in an un-maintained condition is a question of fact for the jury.  In its analysis of this question, the jury may consider the industry standards, Owensboro's adopted codes and ordinances, and Wal-Mart's maintenance policy.

Second, if the jury finds that Wal-Mart owed Mr. Garrity a duty, there is a genuine dispute

20

of material fact as to Mr. Garrity's fault.  In its analysis of this question, the jury may consider Mr. Garrity's evidence that: the sidewalk on which he fell is the only sidewalk from the TLE Department to the front of the store; he received instructions from Wal-Mart to return his items to the front of the store; and since the Wal-Mart parking lot had been cleared, he believed that the sidewalks were safe.  Moreover, the jury may consider Wal-Mart's evidence that its employee did not instruct Mr. Garrity to walk to the front of the store and that Mr. Garrity had several alternatives, including the options of: waiting until his vehicle was finished and driving to the front of the store; walking on the cleared driveways and parking areas west of the pallets; and making the exchange at another time.

Finally, the Court finds that Wal-Mart's citation to Lucas v. Gateway Community Services Organization, Inc., 343 S.W.3d 341 (Ky. App. 2011); Shelton v. Kentucky Easter Seals Society, Inc., 2011 WL 2496182 (Ky. App. June 24, 2011); and Faller v. Endicott Mayflower, LLC, 2011 WL 2582339 (Ky. App. Dec. 14, 2011) is unpersuasive.  In those cases, summary judgment was entered for the defendants.  However, the injured plaintiffs admitted that they were aware of the hazardous conditions that injured them before they fell. Also, the plaintiffs fell after encountering the conditions without any instruction from the defendants.   Here, however, the evidence is distinguishable.  Again, the Court notes that Plaintiffs presented evidence that Mr. Garrity was not aware of the ice that injured him before he fell and that a Wal-Mart employee instructed him to walk toward the hazard.

In sum, because genuine disputes of material fact exist, summary judgment is inappropriate. Therefore, Wal-Mart's motion for summary judgment must be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment [DN 24] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's First Motion in Limine Concerning Plaintiffs' Expert, Keith Vidal, P.E. [DN 26] is **GRANTED** in part and **DENIED** in part.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

22